The **GOODYEAR TIRE & RUBBER COMPANY AND AFFILIATES**,
Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 510–85T.

United States Claims Court.

Dec. 8, 1987.

Barring Coughlin, Cleveland, Ohio, for plaintiff. Stephen L. Buescher and Deborah Z. Read, of counsel.

Robert N. Dorosin, Washington, D.C., with whom was Acting Asst. Atty. Gen. Michael C. Durney, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This tax refund case came before the court for disposition on plaintiff's motion for summary judgment to determine whether foreign tax law concepts are controlling when computing indirect tax credits under section 902 of the Internal Revenue Code of 1954, 26 U.S.C § 902 (1954), and in the alternative, whether the payments received by its foreign subsidiary from the British government during 1975 and 1976 were properly classified and treated as refunds for years 1970 and 1971 under section 905 of the Internal Revenue Code of 1954, 26 U.S.C. § 905 (1954). Defendant brought a cross-motion for summary judgment claiming that United States tax law concepts are controlling for purposes of section 902 and that the Commissioner of Internal Revenue acted properly under section 905 when he directed that the section 902 indirect tax credits claimed by plaintiff on its 1970 and 1971 United States income tax returns be recomputed upon receipt of tax refunds in 1975 and 1976 by the foreign subsidiary for the years 1970 and 1971.

## FACTS

In 1970 and 1971, Goodyear Tire & Rubber Company, Ltd. (Goodyear England), a Great Britain corporation and plaintiff's wholly owned subsidiary, operated at a profit and paid dividends to plaintiff.[1] During this time, Goodyear England was engaged in business in Great Britain and, to a small extent, in the Republic of Ireland. It conducted no business in the United States and, consequently, had no income subject directly to United States income taxes. Plaintiff, therefore, claimed foreign tax credits in 1970 and 1971 pursuant to section 902(a)(1) for British taxes deemed paid on the dividends by Goodyear England.[2]

In 1972, Goodyear England operated at a loss. This loss, recognized under both United States and British tax law, was carried back to 1971 and applied to reduce Goodyear England's 1971 accumulated profits. Because the amount of the 1972 loss was known prior to the time Goodyear England paid its 1971 taxes, the dividend paid to plaintiff in 1971 was considered to have been paid out of Goodyear England's accumulated profits as reduced by both its 1972 loss and the 1971 taxes paid thereon.

---

1. The Goodyear Tire & Rubber Company is the parent of the consolidated group of United States corporations constituting the plaintiff.

2. A condition for the credit is that the domestic corporation satisfy certain ownership requirements in the foreign corporation. The only such ownership requirement applicable here is that the United States parent corporation own at least ten percent of the voting stock of the foreign corporation. 26 U.S.C. § 902(a)(1) (1954). There is no dispute that plaintiff satisfies this requirement since Goodyear England is plaintiff's wholly owned subsidiary.

In 1973, Goodyear England incurred another net operating loss. This loss, however, was attributed to two British tax deductions not allowable under United States tax law. The first permitted accelerated depreciation write-offs and the second permitted inventory reductions by the increase in inventory value less ten percent of trading profit for the year. Since 1972 was also a loss year, Goodyear England carried back its 1973 net operating loss in accordance with British tax law to both 1971, where it more than eliminated all accumulated profits, and 1970, where it substantially reduced accumulated profits. The British government subsequently made refund payments to Goodyear England during 1975 and 1976 amounting to £ 650,000 for the adjustment to its 1971 accumulated profits and £ 671,599 for the adjustment to its 1970 accumulated profits.

In 1980, as a consequence of the payments to Goodyear England by the British Government in 1975 and 1976, the Commissioner of Internal Revenue, asserting authority under section 905, recomputed the section 902(a)(1) tax credits claimed by plaintiff on its 1970 and 1971 United States income tax returns. The Commissioner converted Goodyear England's 1973 loss under British tax law to a profit of £ 1,137,152 in accordance with United States tax law which did not allow the accelerated depreciation or special inventory deductions permitted by Great Britain. On November 21, 1980, the Commissioner adjusted the foreign tax credits claimed by plaintiff in 1970 and 1971 and timely assessed the following deficiencies, plus interest thereon, owed by plaintiff as a result of these new computations:

| YEAR | TAX | INTEREST | TOTAL |
|------|-----|----------|-------|
| 1970 | $323,654 | $132,611.66 | $456,265.66 |
| 1971 | 237,616 | 97,359.06 | 334,975.06 |
| | | | 791,240.72 |

Plaintiff subsequently paid the tax deficiencies to the Internal Revenue Service Center, Cincinnati, Ohio on December 3, 1980.

In November 1982, plaintiff filed timely refund claims with the IRS for the assessed deficiencies plus interest thereon. The Regional Commissioner of Internal Revenue issued a notice of disallowance of the refund claims on September 30, 1983. Plaintiff subsequently filed its Complaint in this court to recover $791,240.72 paid to IRS, plus interest thereon, as a result of the adjustments to its 1970 and 1971 United States income tax returns.

## DISCUSSION

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. RUSCC 56(c). In evaluating a motion for summary judgment, any doubt must be resolved in favor of the nonmoving party. *Housing Corp. v. United States*, 199 Ct.Cl. 705, 710, 468 F.2d 922, 924 (1972); *Campbell v. United States*, 2 Cl.Ct. 247, 249 (1983). In addition, the "inferences to be drawn from the ... facts ... must be viewed in the light most favorable to the party opposing the motion" for summary judgment. *Addickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Ball v. United States*, 1 Cl.Ct. 180, 183 (1982). The court agrees with the parties that there are no genuine issues of material fact in dispute and that this case is properly before the court for disposition on cross-motions for summary judgment.

### I. *Application of Sections 901 and 902*

Section 901(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 901(a) (1954)[3], in accordance with section 901(b)(1) of the Internal Revenue Code of 1954, 26 U.S.C.

3. The relevant part of the statute as in effect for the period here in controversy is as follows:
    (a) Allowance of Credit—If the taxpayer chooses to have the benefits of this subpart, the tax imposed by this chapter shall ... be credited with the amounts provided in the applicable paragraphs of subsection (b) plus, in the case of a corporation, the taxes deemed to have been paid under sections 902 and 960....
26 U.S.C. § 901(a) (1954).

§ 901(b)(1) (1954) [4], permits domestic taxpayers to elect to receive a credit, within prescribed limits, for any foreign income tax paid, or deemed to have been paid, during the taxable year. Section 902(a)(1) prescribes the terms under which the deemed paid foreign tax credit is allowed and explains the manner in which this credit is to be computed. The statute provides in pertinent part:

[a] domestic corporation which owns at least 10 percent of the voting stock of a foreign corporation from which it receives dividends in any taxable year shall—

(1) to the extent such dividends are paid by such foreign corporation out of accumulated profits (as defined in subsection (c)(1)(A)) of a year for which such foreign corporation is not a less developed country corporation, be deemed to have paid the same proportion of any income, war profits, or excess profits taxes paid or deemed to be paid by such foreign corporation to any foreign country ... on or with respect to such accumulated profits ... which the amount of such dividends (determined without regard to Section 78) bears to the amount of such accumulated profits in excess of such income, war profits, and excess

profits taxes (other than those deemed paid)....

26 U.S.C. § 902(a)(1) (1954).

Section 902(a)(1) requires the deemed paid foreign tax credit claimed by a domestic corporation with regard to dividends received from a foreign subsidiary to be computed by multiplying the amount of foreign income tax the foreign subsidiary paid "on or with respect to" that years accumulated profits by a fraction. *Champion Int'l Corp. v. Commissioner of Internal Revenue*, 81 T.C. 424, 429 (1983); *H.H. Robertson Co. v. Commissioner of Internal Revenue*, 59 T.C. 53, 77 (1972), *aff'd*, 500 F.2d 1399 (3rd Cir.1974). The numerator of the fraction is the dividend paid to the domestic corporation by the foreign subsidiary out of the foreign subsidiary's accumulated profits for the tax year. *Id.* The denominator of the fraction is the accumulated profits for the tax year minus the foreign tax paid by the foreign subsidiary. *Id.* [5] Both parties in this case agree that the equation set forth by the court is the proper mathematical expression of section 902(a)(1). [6] The parties disagree, however, as to whether the denominator of this fraction, *i.e.*, accumulated profits of the foreign subsidiary minus the foreign income tax paid by the foreign subsidiary, must be computed under British or United States tax law.

**4.** The relevant part of the statute as in effect for the period here in controversy is as follows:

(b) Amount Allowed—Subject to the applicable limitation of section 904, the following amounts shall be allowed as the credit under subsection (a):

(1) Citizens and domestic corporations—In the case of a ... domestic corporation, the amount of any income, war profits, and excess profits taxes paid or accrued during the taxable year to any foreign country....

26 U.S.C. § 901(b)(1) (1954).

**5.** Section 78 of the Internal Revenue Code of 1954, 26 U.S.C. § 78 (1954), requires that the amount of tax deemed paid by the domestic corporation be included in its gross income, a computation referred to as "grossing-up." When there is grossing-up, the denominator of the section 902 tax credit equation is equal to accumulated profits of foreign subsidiary without reduction for the amount of foreign tax paid by the foreign subsidiary on such profits. When there is no grossing-up, the denominator is equal to accumulated profits of foreign sub-

sidiary minus the amount of foreign tax paid by the foreign subsidiary on such profits. Section 78 is not applicable, and therefore no grossing-up is required, when "any amount of United Kingdom income tax appropriate to a dividend paid by a corporation which is a resident of the United Kingdom ... is included in the gross income of such domestic corporation in accordance with Article XIII of the income tax convention between the United States and the United Kingdom." Treas.Reg. § 1.78–1(c) (1965). The parties concur as to the appropriateness of the section 902 equation.

**6.** Section 902(a)(1) may be expressed as the following mathematical equation:

$$\text{Section 902 Credit} = \text{Foreign Income Tax Paid by Foreign Subsidiary} \times \frac{\text{Dividends Received by Domestic Parent}}{\text{Accumulated Profits of Foreign Subsidiary minus Foreign Tax Paid}}$$

Plaintiff contended that in computing its section 902(a)(1) tax credit for dividends received from Goodyear England during 1970 and 1971, the accumulated profits of Goodyear England must be computed in accordance with British tax law concepts so that each year's accumulated profit is matched properly with the foreign tax imposed on those profits. Plaintiff argued that if British tax concepts are not followed, the British taxes imposed on Goodyear England will be matched with accumulated profits of a different year and result in double taxation. The defendant claimed, however, that United States tax law should be applied for foreign tax credit purposes because there is nothing set forth in either section 902(a)(1) or section 902(c)(1)(A) to indicate that the statutory term "accumulated profit" should be equated with foreign taxable income. Defendant claimed that "accumulated profit" refers instead to United States taxable income and requires a computation which is exactly the same as if the foreign subsidiary were itself a domestic corporation. Both parties cite *Champion International Corp. v. Commissioner*, 81 T.C. 424 (1983) and *Steel Improvement and Forge Co. v. Commissioner*, 36 T.C. 265 (1961), *rev'd on other grounds*, 314 F.2d 96 (6th Cir.1963), for support. The court, recognizing the Tax Court's expertise in addressing the substantive questions of law presented by this case, will review the parties' contentions in light of these two Tax Court decisions prior to discussing the statutory language itself and its applicable legislative history and administrative interpretation.

In *Champion International*, a domestic corporation received a dividend from its Canadian subsidiary in 1971 and claimed a foreign tax credit pursuant to section 902. The subsidiary had operated at a profit in 1969 and 1971, but incurred a loss in 1970. The loss, recognized by both United States and Canadian tax law, was carried back to 1969 in accordance with Canadian carryback provisions resulting in a partial refund of Canadian taxes previously paid by the subsidiary for 1969. The Tax Court held that when computing the foreign tax credit for the 1971 dividend the foreign subsidiary's 1969 accumulated profits were to be reduced by the amount of the loss carryback from 1970 for purposes of the denominator as well as the numerator of the fraction in the statutory formula.

Plaintiff in the case at bar contended that *Champion International* stands for the proposition that foreign tax law is controlling when computing the accumulated profits of a subsidiary and the subsequent amount of taxes deemed paid. Plaintiff's reliance is misplaced. Although the 1970 loss was carried back in accordance with foreign tax law, the threshold questions as to whether there was a loss, and the subsequent determination of the amount of the loss, were decided pursuant to United States tax law. *Champion International,* 81 T.C. at 433. Thus, the accumulated profits computed under United States tax law and the taxes paid by the subsidiary computed under Canadian tax law were both reduced as a result of the loss because both United States and Canadian tax law recognized the loss. *Id.* at 447.

In *Steel Improvement*[7] the taxpayer was a domestic corporation which in 1954 received a dividend from its wholly owned Canadian subsidiary. The subsidiary reported a taxable loss for 1954 in its Canadian tax return and carried the loss back to 1953 offsetting taxable income previously reported for that year and causing the taxes previously paid to be refunded. The loss, however, was caused by a special Canadian tax provision that would not have been an allowable deduction under United States tax law. In fact, applying United States tax law, the subsidiary actually sustained a profit for 1954.

The Tax Court held in *Steel Improvement* that the taxpayer's deemed paid foreign tax credit must be adjusted to account for the refund of Canadian taxes to its

---

7. *Steel Improvement,* although reversed on other grounds, rendered the Tax Court's holding on the foreign tax credit issue meaningless so far as the rights of the parties to that case were concerned. It nevertheless represents sound analysis and is further illustrative of the complex relationship that exists between foreign losses and section 902 deemed paid foreign tax credits.

subsidiary, in spite of the fact that the 1954 loss was not to be recognized for purposes of reducing the subsidiary's accumulated profits in the section 902 equation. *Steel Improvement*, 36 T.C. at 282. The court did not recognize the reduction in accumulated profits because the loss resulted from a special Canadian accelerated depreciation allowance that was not an allowable deduction under United States tax law. *Id.* at 277. As the court explained in *Champion International*:

> In *Steel Improvement & Forge Co.*, the carryback of the loss did not affect the accumulated profits of the carryback year or the determination of what year's accumulated profits were the source of the dividend therein concerned. This is because the loss was caused by a deduction not recognized by U.S. law. Therefore, although the loss eliminated the Canadian *tax* of both the loss year and the carryback year, it left the *accumulated profits* of those years unaffected. Accumulated profits are determined under American law rather than foreign law.

*Champion International*, 81 T.C. at 447 (emphasis in original).

■ In the case at bar, the 1972 loss sustained by Goodyear England was recognized by both United States and British tax law and, as a result, operated to reduce both Goodyear England's accumulated profits and its tax liability for 1972 and 1971, the carryback years, as in *Champion International*. The 1973 loss, however, was not recognized under United States tax law. Thus, although the loss reduced Goodyear England's tax liability under British tax law for 1973, 1971 and 1970, the carryback years, it should leave the accumulated profits of those years intact for purposes of the Section 902 indirect tax credit computation, as in *Steel Improvement*. The court, therefore, concludes that defendant correctly adjusted Goodyear England's 1973 profits to correspond with United States tax law. The court does not hold, however, that accumulated profit is in all cases equivalent to United States earnings and profits and should be computed exactly as if the foreign subsidiary were

itself a domestic corporation. Such a conclusion must be arrived at independently on a case by case basis given the complexities inherent in the applicable code provisions and in order to reach the underlying purposes Congress had in mind when enacting the indirect tax credit legislation.

## A. *The Statutory Framework*

■ It is axiomatic that in determining the meaning of a statute, the inquiry must first be directed to the statutory language itself and, if the language is unambiguous, the duty of interpretation does not arise. *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982); *Flora v. United States*, 357 U.S. 63, 65, 78 S.Ct. 1079, 1081, 2 L.Ed.2d 1165 (1958); *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917); *Lykes Bros. S.S. Co., Inc. v. United States*, 206 Ct.Cl. 354, 356, 513 F.2d 1342, 1349 (1975); *United Am. Ins. Co. v. United States*, 201 Ct.Cl. 32, 33, 475 F.2d 612, 614 (1973); *Freese v. United States*, 6 Cl.Ct. 1, 17 (1984), *aff'd mem.*, 770 F.2d 177 (Fed.Cir.1985); *J.H. Miles & Co., v. United States*, 3 Cl.Ct. 10, 13 (1983). In such circumstances, the court is limited to enforcing the statute according to its expressed terms.

Section 902(c)(1)(A) defines "accumulated profits" for purposes of the indirect foreign tax credit as follows:

> (1) Accumulated profits defined.—For purposes of this section, the term 'accumulated profits' means with respect to any foreign corporation—(A) for purposes of subsections (a)(1), (b)(1)(A), and (b)(2)(A), the amount of its gains, profits or income computed without reduction by the amount of the income, war profits, and excess profits taxes imposed on or with respect to such profits or income by any foreign country....
>
> *    *    *    *    *    *
>
> The secretary or his delegate shall have full power to determine from the accumulated profits of what year or years such dividends were paid, treating dividends paid in the first 60 days of any

year as having been paid from the accumulated profits of the preceding year or years ... and in other respects treating dividends as having been paid from the most recently accumulated gains, profits or earnings.

26 U.S.C. § 902(c)(1)(A) (1954). In addition, section 902(a)(1) provides that, to the extent a qualifying domestic corporation receives dividends which are paid by a foreign corporation out of accumulated profits, the domestic corporation shall be deemed to have paid the same proportion of foreign taxes paid "on or with respect to such accumulated profits, which the amount of such dividends ... bears to the amount of such accumulated profits in excess of such income, war profits and excess profits taxes...." 26 U.S.C. § 902(a)(1) (1954).

The repeated reference to "such accumulated profits" demands that the meaning assigned to the term be consistent throughout the section 902 indirect tax credit formula. *Champion Int'l Corp. v. Commissioner of Internal Revenue*, 81 T.C. 424, 435 (1983). Both parties in the present case agree that United States tax law governs the definition of the numerator, that is, whether a distribution of property by a foreign subsidiary to a domestic parent corporation is a dividend or a return of capital. *Untermyer v. Commissioner of Internal Revenue*, 24 B.T.A. 906 (1931), *aff'd*, 59 F.2d 1004 (2d Cir.), *cert. denied*, 287 U.S. 647, 53 S.Ct. 92, 77 L.Ed. 559 (1932). United States tax law also governs what foreign taxes qualify as income taxes for indirect tax credit purposes. *Keasbey & Mattison Co. v. Rothensies*, 133 F.2d 894 (3rd Cir.), *cert. denied*, 320 U.S. 739, 64 S.Ct. 39, 88 L.Ed.2d 438 (1943). Accumulated profits in the denominator of the indirect tax credit equation represent the fund from which dividends in the numerator of the equation are paid. Algebraic consistency requires that United States tax law similarly govern the computation of the foreign subsidiary's accumulated profits, *i.e.*, the fund from which the dividends are paid and the amount upon which the tax is based. According to two commentators who have written extensively on the indirect credit:

After all the profits of a year have been distributed, the quantity used in the numerator of the fraction, dividends, must be the same as the amount used in the denominator, net profits. Otherwise, the amount of indirect credit will be either more or less than the amount of the foreign tax actually paid. In short, the section 902 allocation fraction functions properly only when the definition of dividends (aggregate) and net profits is exactly the same.

1 E. Owens & G. Ball, *The Indirect Credit* 162 (1975). The statute itself is silent, however, as to whether accumulated profits are to be computed in accordance with United States or foreign tax law. Thus, in this area of law fraught with complex definitional concepts, the court cannot look only to the express language of the statute. *Champion Internat'l*, 81 T.C. at 436. *See also, Associated Telephone & Telegraph Co. v. United States*, 306 F.2d 824, 832 (2d Cir.1962) (a court must consider the policies behind the foreign tax credit generally rather than terminology itself).

Lack of clarity in statutory language requires a court to instead "find that interpretation which can most fairly be said to be embedded in the statute, in the sense of being most harmonious with its scheme and with the general purposes that Congress manifested." *NLRB v. Lion Oil Co.*, 352 U.S. 282, 297, 77 S.Ct. 330, 338, 1 L.Ed.2d 331 (1957); *see also Bailey v. United States*, 206 Ct.Cl. 169, 178, 511 F.2d 540, 546 (1975); *Akins v. United States*, 194 Ct.Cl. 477, 483, 439 F.2d 175, 177 (1971); *Conlon v. United States*, 8 Cl.Ct. 30, 33 (1985); *Witco Chemical Corp. v. United States*, 2 Cl.Ct. 504, 507 (1983), *aff'd*, 742 F.2d 615 (Fed.Cir.1984). When statutory language is nebulous, literal interpretation will be eschewed in favor of a more flexible inquiry into legislative intent, *Texas State Comm'n for the Blind v. United States*, 6 Cl.Ct. 730, 738 (1984), and into regulations promulgated by the administrative agency entrusted with the obligation of enforcing the statute. *Sohio Transp. Co. v. United States*, 5 Cl.Ct. 620, 629 (1984), *aff'd*, 766 F.2d 499 (Fed.Cir.1985).

## B. *The Legislative History*

■ In enacting section 238(e) of the Internal Revenue Act of 1921, the predecessor of section 902, Congress stated:

In such a case a foreign subsidiary is much like a foreign branch of an American corporation. If the American corporation owned a foreign branch, it would include the earnings or profits of such branch in its total income, but it would also be entitled to deduct from the tax based upon such income any income or profits taxes paid to foreign countries by the branch in question. Without special legislation, however, no credit can be obtained where the branch is incorporated under foreign laws.

Since the foreign subsidiary may not send back to the American parent company all of its profits or earnings, it follows that the American parent company should not obtain a credit for all the income and profits taxes paid to foreign countries. The amendment in question grants only a partial or prorated credit.

61 Cong.Rec. 7184 (1921). Where congress adopts a new law incorporating a prior law, Congress can be presumed to acquiesce in the purpose of the incorporated law. *Seaboard Air Line R. Co. v. United States,* 113 Ct.Cl. 437, 447, 83 F.Supp. 1012, 1015, *cert. denied,* 338 U.S. 848, 70 S.Ct. 88, 94 L.Ed. 519 (1949); *Massachusetts Mut. Life Ins. Co. v. United States,* 5 Cl.Ct. 581 (1984), *aff'd,* 761 F.2d 666 (Fed.Cir.1985). There are three principal purposes of the indirect tax credit provisions, *i.e.,* to treat foreign subsidiaries and foreign branches of domestic corporations similarly, to eliminate double taxation and to limit the amount of foreign credit a domestic corporation is permitted to claim with respect to foreign taxes paid by its foreign subsidiary. The court's holding that United States tax law concepts must be applied to adjust the foreign subsidiary's profits for purposes of section 902 effectuates congressional intent.

Defendant did not recognize Goodyear England's 1973 loss carryback of £ 3,375,-375 and instead converted the loss to a profit of £ 1,137,152 since United States tax law did not allow the two British deductions which precipitated the loss. Defendant then adjusted Goodyear England's accumulated profits for 1970 and 1971 to £ 3,812,467 and £ 3,224,486 respectively and recomputed plaintiff's tax credit to equal £ 235,038 in 1970 and £ 12,086 in 1971. The Commissioner further determined that since United States tax law did not recognize Goodyear England's claimed 1973 British tax loss, the denominator of the section 902 tax credit equation still exceeded the stipulated dividends in the numerator. Thus, contrary to plaintiff's computations and sourcing arguments, there was no need to proportion the dividends received by plaintiff in 1970 and 1971 to accumulated profits of other previous years.

Contrary to plaintiff's contention, the above computations do not result in double taxation. It is true that the foreign subsidiary, pursuant to British tax law, claimed a loss in 1973 which it was permitted to carry back to reduce its profits for 1970 and 1971. When determining a section 902 credit for a domestic parent, however, the foreign subsidiary's profits must be adjusted in accordance with United States tax law. *Champion International,* 81 T.C. at 447. The parties have stipulated that all adjustments made by the Commissioner were proper under United States tax law and that the two British deductions which resulted in the 1973 loss were not allowable deductions under United States tax law. The adjustments were, therefore, proper and double taxation is avoided because the profits from which the dividends were paid in 1970 and 1971 were not reduced by the amount of the loss and, in addition, the subsidiary incurred no tax liability on these profits as a result of the tax refunds. However, the refund of 1970 and 1971 taxes to the subsidiary must still be accounted for when computing the section 902 credit to ensure that credit given to the domestic parent accurately reflects taxes actually paid by its foreign subsidiary. *Id.* In the case at bar, the subsidiary paid no taxes for 1970 and 1971 as a result of the refunds it received during 1975 and 1976. To not recognize this fact as plaintiff urges would eviscerate the very purpose of the

prorata credit and permit plaintiff a substantial windfall in avoiding other taxes with the phantom taxes deemed paid.

Permitting plaintiff to take advantage of this windfall would also detract from treating foreign branches and foreign subsidiaries similarly for purposes of the section 902 credit. In its General Statement adopting the Revenue Act of 1962, which amended both section 78 and section 902, the Senate stated:

> The remaining provisions in the bill (which included sections 78 and 902) are concerned primarily with improving tax equity and eliminating tax evasion and avoidance, either in the domestic economy or with respect to income earned abroad by American interests. In the latter case, the primary concern ... has been with the removal of special tax advantages accruing to 'tax havens.'

S.Rep. No. 1881, 87th Cong., 2d Sess. 1, *reprinted in* 1962 U.S.Code Cong. & Admin.News 3304. Absent the amendments to section 78 by the Revenue Act of 1962, the entire income of a foreign branch would be treated as taxable income by both the United States and the foreign country, while only the distributed after-tax income of a foreign subsidiary would be treated as taxable income by the United States. Treating the foreign subsidiary in the instant case similarly to a foreign branch eliminates tax evasion and avoidance accruing to the foreign corporate "tax haven" without subjecting the subsidiary to double taxation.

### C. *Administrative Interpretation*

Treasury Regulation 1.902–3(c)(1) states that "[a]ccumulated profits for any taxable year of a first-tier corporation which is not a less developed country corporation ... shall ... be the sum of (i) the earnings and profits of such corporation for such year, and (ii) the foreign income taxes imposed on or with respect to the gains, profits and income to which such earnings and profits are attributable." 26 C.F.R. § 1.902–3(c)(1) (1965). This regulation clearly distinguishes "earnings and profits" from "gains, profits and income." The relation of "gains, profits and income" to foreign income taxes indicates this tax concept is to be equated with foreign taxable income. "Earnings and profits," on the other hand, appear in this instance to refer to income which would be subject to United States tax. *Cf. Champion Int'l*, 81 T.C. at 447.[8] This regulation is an attempt to recoup, for purposes of section 902, income that would otherwise escape taxation in both the foreign country and the United States. The regulation is consistent with the purposes enunciated by Congress when enacting the indirect tax credit legislation and further supports the court's decision.

### II. *Application of Section 905*

Plaintiff contended that in the event United States tax law concepts are deemed to be controlling for purposes of section 902, the payments from the British government to the foreign subsidiary during 1975 and 1976 were not the type of payments referred to as refunds in section 905 and are, therefore, not within the reach of the Commissioner's 905 recomputation powers. Plaintiff argued that since the language of section 905 has not changed from that of its predecessor, section 252 of the Revenue Act of 1918, the term "refund" must be interpreted consistently with its original meaning, *i.e.*, the term applies only to refunds of incorrect foreign taxes and the

---

8. Computing "earnings and profits" in accordance with United States tax law in this instance dispels the plaintiff's "sourcing" arguments and preserves the Tax Court's ruling in *H.H. Robertson Co. v. Commissioner of Internal Revenue*, 59 T.C. 53 (1972), *aff'd by memorandum*, 500 F.2d 1399 (3rd Cir.1974), that accumulated profits is an annual computation while earnings and profits is an aggregate computation of a corporation's undistributed realized profits. Although earnings and profits is an aggregate concept, for foreign tax credit purposes it is, in effect, an annual computation since the regulation mandates only those earnings and profits attributable to foreign taxable income for the given year are to be considered when computing the indirect foreign tax credit. Thus, although a foreign subsidiary's accumulated profits initially has as its basis a computation based on earnings and profits, adjustments required by the regulation apportion this aggregate amount to the particular year(s) in question making the initial aggregate computation ultimately an annual computation.

**32**

subsequent event of a net operating loss does not disturb an earlier credit granted for a foreign tax which was correct when paid. Thus, according to plaintiff, the Commissioner of Internal Revenue acted without authority when he directed the section 902(a)(1) tax credits claimed by plaintiff on its 1970 and 1971 United States income tax returns be recomputed. Plaintiff's reasoning, however, is inapposite with both the expressed language of the statute and rules of statutory interpretation.

The plain and unambiguous language of section 905(c) states that "if any tax paid is refunded in whole or part, the taxpayer shall notify the Secretary or his delegate, who shall redetermine the amount of the tax for the year or years affected." 26 U.S.C. § 905(c). The duty of interpretation does not arise when statutory language is unambiguous. *E.g., American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982). In such cases, words in the statute are considered to be used in their ordinary and usual sense. *Old Colony R.R. Co. v. Commissioner of Internal Revenue,* 284 U.S. 552, 560, 52 S.Ct. 211, 213, 76 L.Ed. 484 (1932); *Hine v. United States,* 113 F.Supp. 340, 343, 125 Ct.Cl. 836, 841 (1953); *Fordyce v. United States,* 7 Cl.Ct. 591, 596 (1985). The court agrees with defendant that the reason for the refund is immaterial. What is significant is that a tax refund was paid to, and received by, plaintiff's subsidiary. The statutory term "refund" when construed in its ordinary and usual sense includes repayment of tax dollars stemming from a subsequent net operating loss. The court would be hard-pressed to find any repayment of tax dollars to not be a refund as the term is used. Indeed, to hold as plaintiff urged, that Congress must be held to assent only to those definitions afforded to a term at the time the original statute incorporating that term was enacted, would produce results contrary to the unmistakable purposes Congress had in mind when enacting the indirect tax credit legislation.

As the court previously discussed, permitting plaintiff an indirect tax credit for taxes its foreign subsidiary did not in fact pay would go well beyond the legislation's purpose of preventing double taxation and would frustrate the purposes of treating a foreign subsidiary similarly to a foreign branch of a domestic corporation and limiting the amount of foreign tax credit a domestic corporation is permitted to claim. The court holds instead that the payments to Goodyear England during 1975 and 1976 were refunds as that term is used in section 905 and, therefore, the Commissioner of Internal Revenue did act properly when he directed the section 902(a)(1) credits claimed by plaintiff on its 1970 and 1971 United States income tax returns be recomputed.

CONCLUSION

For the foregoing reasons, the court finds that plaintiff is entitled to no tax refund as a result of the recomputations to its 1970 and 1971 United States income taxes ordered by the Commissioner of Internal Revenue. Plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted. The Clerk is ordered to enter judgment in favor of defendant and to dismiss the complaint.

IT IS SO ORDERED.