T.C. Memo. 2017-75

UNITED STATES TAX COURT

PANAGIOTA PAM SOTIROPOULOS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19884-12.                                    Filed May 1, 2017.

<u>Jeffrey L. Gould</u>, for petitioner.

<u>Scott A. Hovey</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  Section 901(a) permits a U.S. citizen or resident to claim

a credit for income tax paid to a foreign country.[1]  If the foreign tax paid is later

_____

[1]All statutory references are to the Internal Revenue Code (Code) in effect
for the tax years in issue, and all Rule references are to the Tax Court Rules of
Practice and Procedure.  We round all monetary amounts to the nearest dollar.

[*2] "refunded in whole or in part," the taxpayer is required to notify the Secretary, "who shall redetermine the amount of the tax for the year or years affected." Sec. 905(c)(1)(C). Any U.S. tax due as a result of the Secretary's redetermination is not subject to deficiency procedures but "shall be paid by the taxpayer on notice and demand by the Secretary." Sec. 905(c)(3); see sec. 6213(h)(2)(A).

Petitioner is a U.S. citizen who lived and worked in the United Kingdom. On her Federal income tax returns for 2003-2005, she claimed foreign tax credits based on the amounts of U.K. income tax withheld from her wages by her employer. Her U.K. income tax returns for the relevant periods, however, showed large overpayments. She applied to have those overpayments returned to her, and the U.K. Government duly rebated to her substantially all of the tax that had been withheld from her wages. Petitioner contended that these sums had not been "refunded" because her ultimate entitlement to refunds remained under investigation in the United Kingdom. She accordingly did not notify the Secretary (by filing amended returns or otherwise) pursuant to section 905(c)(1).

Following examination of petitioner's 2003-2005 returns, the Internal Revenue Service (IRS or respondent) issued her a notice of deficiency. In that notice the IRS determined that the U.K. taxes she paid had been "refunded" and recomputed her foreign tax credits accordingly; the IRS also determined for each year an

**[*3]** accuracy-related penalty under section 6662(a). After the case was docketed in this Court, respondent moved to dismiss for lack of jurisdiction. He contended in that motion that he had erred in issuing the notice of deficiency; that this case is not subject to deficiency procedures; and that section 905(c) authorized him to redetermine petitioner's 2003-2005 tax and collect it from her upon notice and demand.

In Sotiropoulos v. Commissioner (Sotiropoulos I), 142 T.C. 269 (2014), we held that this Court has jurisdiction to determine, at a minimum, whether section 905(c), the statutory provision alleged to divest us of jurisdiction, applies. We thus held that we have jurisdiction to determine whether the U.K. taxes petitioner paid were "refunded in whole or in part" within the meaning the statute. Respondent subsequently moved for partial summary judgment on this question. Concluding as we do that the U.K. taxes in question were indeed "refunded" to petitioner, we will grant respondent's motion, with the corollary that this case must be dismissed insofar as it concerns the foreign tax credit adjustments properly subject to redetermination by the Secretary under section 905(c)(1).

Background

The parties filed a stipulation of facts that is incorporated by this reference. The following facts are derived from that stipulation, amplified as necessary by the

[*4] parties' pleadings, motion papers, and the exhibits and declarations attached thereto. Petitioner resided in London, England, when she filed her petition.

Petitioner is a U.S. citizen who lived in London, England, during 2002-2006.[2] She was employed by the London office of Goldman Sachs at all relevant times. As a U.K. resident working in the United Kingdom she was subject to U.K. income tax. She received employee compensation from Goldman Sachs, which withheld U.K. income tax from her wages. The withheld taxes, denominated "Pay as you Earn" or "PAYE" taxes, constituted prepayments of U.K. income tax.

During 2002-2006 petitioner made substantial investments in U.K. film partnerships that used structured transactions to generate large purported deductions for U.K. tax purposes. For each year she filed a U.K. income tax return reflecting (among other things) her estimated share of the film partnerships' deductions and losses. After receiving final information from the partnerships, she filed amended U.K. returns revising those estimates.

Despite her U.K. residency, petitioner as a U.S. citizen was required to file Federal income tax returns for the years at issue. For U.S. purposes she has al-

---

[2]For U.K. tax purposes petitioner reported on the basis of a fiscal year ending April 5. For purposes of determining her correct U.S. tax liabilities for 2003-2005, therefore, the relevant U.K. tax years are her 2002-2006 fiscal years.

[*5] ways been a calendar year, cash basis taxpayer.  She filed timely returns on Forms 1040, U.S. Individual Income Tax Return, for 2003, 2004, and 2005.

On each U.S. return petitioner elected to claim a foreign tax credit under section 901(a).  For each year she claimed a credit based on the amount of U.K. income tax withheld from her wages by Goldman Sachs.  For 2003, 2004, and 2005 she reported having paid, via wage withholding, U.K. income tax of $283,910, $221,318, and $237,882, respectively.[3]  After computing various limitations on the allowable credits, she claimed on her 2003, 2004, and 2005 returns foreign tax credits of $202,855, $134,420, and $162,182, respectively.[4]  She did not report on her U.S. returns any losses or other items attributable to the U.K. film partnerships.

Petitioner's original and amended U.K. returns for the relevant years showed large overpayments, attributable chiefly to losses from the U.K. film part-

---

[3]Respondent converted amounts paid in British pounds into dollars at what respondent determined to be the applicable exchange rate.  Although the correctness of respondent's currency conversions is immaterial for purposes of deciding the instant motion for partial summary judgment, it could be relevant for computing any penalty ultimately determined to be due.

[4]Section 905(a) allows a cash basis taxpayer the option of claiming a foreign tax credit, subject to certain limitations, "in the year in which the taxes of the foreign country * * * accrued."  Petitioner did not exercise this option.  Rather, she claimed for each year a credit based on the PAYE taxes withheld in cash from her wages by Goldman Sachs.

[*6] nerships.  Petitioner applied to Her Majesty's Revenue and Customs
(HMRC), the U.K. taxing authority, to have these overpayments returned to her.
HMRC complied with her request and rebated to her substantially all of the U.K.
income tax that had been withheld from her wages.

Petitioner did not notify the IRS, by filing amended returns or otherwise,
that the U.K. taxes for which she had claimed credits had been "refunded in whole
or in part."  See sec. 905(c)(1)(C).  The IRS nevertheless ascertained through in-
formation sharing that petitioner had invested in U.K. film partnerships; that she
had claimed substantial deductions attributable thereto; and that she had filed U.K.
returns requesting refunds.  Upon examination of her 2003-2005 returns the IRS
determined that she had received U.K. income tax refunds of $413,126 in 2003,
$292,663 in 2004, and $239,202 in 2005.  It therefore disallowed what it deter-
mined to be appropriate amounts of her claimed foreign tax credits.

Rather than invoking section 905(c)(3) as authority for collecting the rede-
termined tax upon notice and demand, the IRS sent petitioner a notice of deficien-
cy for 2003-2005.  The reductions to petitioner's foreign tax credits were the only
adjustments reflected in the notice of deficiency.  That notice determined tax defi-
ciencies and accuracy-related penalties as follows:

**[*7]**

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2003 | $135,250 | $27,050 |
| 2004 | 127,366 | 25,473 |
| 2005 | 140,848 | 28,170 |

Petitioner timely petitioned this Court for redetermination of the deficiencies and penalties. Approximately one year after filing his answer, respondent moved to dismiss this case for lack of jurisdiction insofar as it concerns the adjustments to petitioner's foreign tax credits. Respondent submitted that he had erred in issuing the notice of deficiency; that section 905(c) authorized him to redetermine the amount of petitioner's 2003-2005 tax and collect it upon notice and demand; and that foreign tax credit adjustments of the sort involved here "are expressly removed from deficiency procedures" by a cross-reference from section 6213(h)(2)(A) to section 905(c).

In <u>Sotiropoulos I</u> we noted the well-settled rule that "[t]his Court always has jurisdiction to determine whether it has jurisdiction." 142 T.C. at 272 (citing <u>Cooper v. Commissioner</u>, 135 T.C. 70, 73 (2010)). We concluded that we have jurisdiction, at a minimum, "to decide whether the statutory provision alleged to divest us of jurisdiction applies, i.e., whether the U.K. taxes paid by petitioner have been 'refunded in whole or in part' within the meaning of section

**[\*8]** 905(c)(1)(C)." Id. at 279. We noted that this assumption of jurisdiction would afford petitioner a prepayment forum for resolving "the central issue that she raises on the merits, namely, that the amounts she received from U.K. taxing authorities * * * were not 'refunds.'" Id.

Discussion

A.    Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The Court may grant summary judgment "upon all or any part of the legal issues in controversy" when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(a) and (b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. Sundstrand Corp., 98 T.C. at 520. However, the nonmoving party "may not rest upon the mere allegations or denials" of his pleadings but instead "must set forth specific facts showing that there is a genuine dispute for trial." Rule 121(d); see Sundstrand Corp., 98 T.C. at 520.

**[\*9]** Respondent seeks partial summary judgment on the ground that the overpayments of U.K. income tax returned to petitioner were "refunded" within the meaning of section 905(c)(1)(C). Petitioner acknowledges that she received these payments; the question we must decide is how they should be characterized for U.S. tax purposes. This is essentially a question of law. Petitioner has pointed to no material dispute of fact affecting the disposition of this question, and we conclude that it may be adjudicated summarily.[5]

B.    Statutory Background

Subject to certain limitations, a U.S. citizen may elect to take a foreign tax credit against her U.S. income tax liability for income taxes paid or accrued to a foreign country or a U.S. possession. Sec. 901(a). Congress anticipated the difficulty of ascertaining, at the time the U.S. return is filed, the exact amount of for-

---

[5]Respondent states that the accuracy-related penalties determined in the notice of deficiency may fall under this Court's jurisdiction and may involve disputed facts. However, respondent has expressed his intention to concede these penalties if the Court grants his motion for partial summary judgment and dismisses the case insofar as it concerns the foreign tax credit adjustments. Respondent also states that "the precise amounts of the refunded U.K. taxes and U.S. tax adjustments" may still be at issue but "should be resolvable under Tax Court Rule 155." It is not clear that we have jurisdiction to determine the precise amounts of the refunded taxes--section 905(c)(1) provides that "the Secretary * * * shall redetermine the amount of the tax"--or of the asserted penalties. But we need not address these issues in ruling on respondent's motion for partial summary judgment. Petitioner's liability (if any) for penalties will be resolved in further proceedings after disposition of respondent's motion for partial summary judgment.

[*10] eign tax that will ultimately be allowable as a credit.  It accordingly provided, in what is now section 905(c), a special procedure for adjusting the - credit when the taxpayer's ultimate foreign tax liability varies from the amount claimed.  Section 905(c)(1) specifies three situations in which a U.S. taxpayer's foreign tax credit must be adjusted:

> (A) accrued taxes when paid differ from the amounts claimed as credits by the taxpayer,
>
> (B) accrued taxes are not paid before the date 2 years after the close of the taxable year to which such taxes relate, or
>
> (C) any tax paid is refunded in whole or in part * * *

The regulations describe these three situations as involving a "foreign tax redetermination."  Sec. 1.905-3T(c), Temporary Income Tax Regs., 53 Fed. Reg. 23614 (June 23, 1988).[6]  If a "foreign tax redetermination" as thus defined occurs, section 905(c)(1) provides that "the taxpayer shall notify the Secretary, who shall redetermine the amount of the tax for the year or years affected."  Because the

---

[6]The 1998 temporary regulations discussed in the text, secs. 1.905-3T and 1.905-4T, Temporary Income Tax Regs., 53 Fed. Reg. 23614, 23617 (June 23, 1988) were in effect through November 6, 2007.  They were amended in November 2007, but the provisions discussed herein remained substantially the same after that amendment.  These provisions were set to expire on November 5, 2010.  See secs. 1.905-3T(f), 1.905-4T(f)(3), Temporary Income Tax Regs., 72 Fed. Reg. 62784, 62787 (Nov. 7, 2007).  The provisions discussed in the text were in effect at all times relevant to this case.

**[*11]** IRS, absent notice from the taxpayer, generally will not know of revisions to the taxpayer's foreign tax liabilities, the Code has long required self-reporting of such changes. See generally Pac. Metals Corp. v. Commissioner, 1 T.C. 1028, 1029, 1031 (1943) (discussing section 131(c) of the Revenue Act of 1936, a predecessor of section 905(c)). Section 6689 provides a strong incentive for taxpayers to comply with their self-reporting obligations under section 905(c)(1), imposing an assessable penalty up to 25% of the deficiency for failure to provide the notice required by section 905(c)(1) unless it is shown that such failure is due to reasonable cause and not due to willful neglect.

With exceptions not relevant here, the taxpayer is supposed to notify the Secretary by filing an amended return. Sec. 1.905-4T(b)(1), Temporary Income Tax Regs., 53 Fed. Reg. 23617 (June 23, 1988). An individual taxpayer is instructed to include with her amended return a revised Form 1116, Foreign Tax Credit, and information sufficient to enable the IRS to redetermine her U.S. tax liability. See sec. 1.905-4T(b)(1), (3), (c), Temporary Income Tax Regs., supra.

Once the IRS redetermines the taxpayer's liability in accordance with section 905(c)(1), "[t]he amount of tax (if any) due * * * shall be paid by the taxpayer on notice and demand by the Secretary, and the amount of tax overpaid (if any) shall be credited or refunded to the taxpayer." Sec. 905(c)(3). A cross-reference

**[*12]** from section 6213 confirms that the usual restrictions on assessment do not apply to section 905(c) adjustments made by the Secretary. See sec. 6213(h)(2) ("For assessments without regard to restrictions imposed by this section in the case of--(A) Recovery of foreign income taxes, see section 905(c)."); sec. 1.905-4T(b)(1), Temporary Income Tax Regs., supra ("Subchapter B of chapter 63 of the Code (relating to deficiency procedures) shall not apply with respect to the assessment of the amount due upon such redetermination.").

C.  Analysis

Petitioner has stipulated that the foreign tax credits she claimed for 2003-2005 corresponded to the U.K. income taxes withheld from her wages under the PAYE system and remitted by her employer to HMRC. She has also stipulated that substantially all of the tax thus paid was later returned to her by HMRC after she reported overpayments on her U.K. returns. The question we must decide is whether this sequence of events falls within the scenario specified in section 905(c)(1)(C), namely, where "any tax paid is refunded in whole or in part." We conclude that it does.

As a general rule, Federal tax provisions should be read to incorporate domestic tax concepts absent a clear congressional expression that foreign concepts should control. Biddle v. Commissioner, 302 U.S. 573, 578-579 (1938). This

**[\*13]** canon of construction has "strong application" even in the foreign tax credit context, where foreign levies may often be at issue. United States v. Goodyear Tire & Rubber Co. & Affiliates, 493 U.S. 132, 145 (1989). In Goodyear, the Supreme Court held that the term "accumulated profits," as it appeared in former section 902(c)(1)(A), governing the indirect foreign tax credit, "should be calculated in accordance with domestic tax principles." Id.

"Our starting point, as in all cases involving statutory interpretation, 'must be the language employed by Congress.'" Id. at 138 (quoting Reiter v. Sonotone Corp., 442 U.S. 330, 337 (1979)). Words used in a statute are to be given their ordinary meaning in the absence of persuasive reasons to the contrary. See, e.g., Burns v. Alcala, 420 U.S. 575, 580-581 (1975); Hewlett-Packard Co. v. Commissioner, 139 T.C. 255, 264 (2012).

Section 905(c)(1)(C) authorizes the Secretary to redetermine a taxpayer's foreign tax credit if the foreign tax paid "is refunded in whole or in part." A "refund" is commonly defined to include "[t]he return of money to a person who overpaid, such as a taxpayer who overestimated tax liability or whose employer withheld too much tax from earnings." Black's Law Dictionary 1472 (10th ed. 2014); see also Paulson v. United States, 78 F.2d 97, 99 (10th Cir. 1935) ("Refund means to pay back, return, restore, make restitution. That is the ordinary and pop-

**[*14]** ular concept of the word."). The amount returned to petitioner by HMRC for each year, which represented U.K. income tax withheld by her employer in excess of the tax shown as due on her U.K. return, falls easily within the ordinary meaning of the word "refund."

The meaning of "refunded" in section 905(c)(1)(C) was explicitly addressed by the trial court in <u>Goodyear</u>. <u>See</u> <u>Goodyear Tire & Rubber Co. v. United States</u>, 14 Cl. Ct. 23 (1987), <u>rev'd on other grounds and remanded</u>, 856 F.2d 170 (Fed. Cir. 1988), <u>rev'd and remanded</u>, 493 U.S. 132 (1989). The taxpayer there, the U.S. parent of a worldwide group (Goodyear), had claimed indirect foreign tax credits for 1970 and 1971 based on U.K. taxes paid by its U.K. subsidiary. The U.K. subsidiary incurred losses in subsequent years and carried those losses back to 1970 and 1971; the U.K. subsidiary then applied for, and received in 1975 and 1976, refunds of the U.K. tax it had paid for 1970 and 1971. Invoking section 905(c)(1)(C), the IRS redetermined Goodyear's 1970-1971 foreign tax credits and assessed the resulting deficiencies. The taxpayer paid the assessed taxes and, following denial of its refund claim, filed a refund suit in the U.S. Court of Federal Claims.

The issue addressed by the Supreme Court was whether the term "accumulated profits" in former section 902(c)(1)(A) should be calculated in accordance

**[*15]** with domestic or foreign tax principles. At the trial level, however, Goodyear raised a second and distinct legal issue: "whether the payments received by its foreign subsidiary from the British government during 1975 and 1976 were properly classified and treated as refunds for years 1970 and 1971 under section 905." Goodyear, 14 Cl. Ct. at 24. The taxpayer argued that the term "refund" as used in section 905(c)(1)(C) "applie[d] only to refunds of incorrect foreign taxes." In the case of a loss carryback, Goodyear noted, the foreign tax initially reported and paid by the foreign subsidiary for the carryback year was correct. That being so, Goodyear urged that "the subsequent event of a net operating loss [should] not disturb an earlier credit granted for a foreign tax which was correct when paid." Id. at 31-32.

Finding section 905(c)(1)(C) to be "plain and unambiguous," the court squarely rejected this argument:

> [W]hen statutory language is unambiguous * * * , words in the statute are considered to be used in their ordinary and usual sense. * * * The court agrees with defendant that the reason for the refund is immaterial. What is significant is that a tax refund was paid to, and received by, plaintiff's subsidiary. The statutory term "refund" when construed in its ordinary and usual sense includes repayment of tax dollars stemming from a subsequent net operating loss. The court would be hard-pressed to find any repayment of tax dollars to not be a refund as the term is used. [Goodyear, 14 Cl. Ct. at 32.]

**[*16]**  In the instant case, petitioner indisputably received "repayment[s] of tax dollars" from HMRC, and she agrees that she received these repayments "under a claim of right."  Cf. N. Am. Oil Consol. v. Burnet, 286 U.S. 417, 424 (1932).[7]  But she asserts that these repayments were not "refunds" because it was uncertain whether she would ultimately be able to keep this money.  HMRC characterized as "tax shelters" the film partnerships in which she had invested, and litigation on this subject is still pending in various U.K. courts.  Petitioner avers that HMRC, in the view of her tax advisers, is "likely to prevail in * * * [its] challenge to the deductions generated by the film partnerships" in which she had invested.

---

[7]Petitioner argues that the claim of right doctrine does not apply here because section 905(c) takes a "transactional approach" to determining the correct foreign tax credit.  In her view, section 905(c) represents an exception to the annual accounting principle because "there is no statute of limitations" on section 905(c)(1) redeterminations by the Secretary.  See Pac. Metals Corp., 1 T.C. at 1030-31.  Contrary to petitioner's view, the annual accounting principle is fully applicable here.  Indeed, section 905(a) explicitly allows cash-basis taxpayers to elect accrual basis accounting when claiming foreign tax credits.  In any event, petitioner cites no authority for the proposition that section 905(c) or the overall foreign tax credit regime applies on a transactional basis rather than an annual basis.  Quite the contrary:  Petitioner acknowledges (correctly) that the United States eliminates double taxation through foreign tax credits "by applying them globally and on an annual rather than a transactional basis."  We conclude that the "claim of right" doctrine applies to the repayments of tax dollars that petitioner received no less than it would apply to any other tax refund.

[*17]  We accept petitioner's averments as true, but they are irrelevant in determining whether the repayments of U.K. tax she received were "refunds."  For U.S. tax purposes, the term "refund" does not connote finality or the final determination of a tax liability.  Every year millions of Americans file Forms 1040 showing an overpayment and indicating the amount of the overpayment they want "refunded" to them.  In the absence of concerns about identity theft or other unusual circumstances, the IRS usually pays such refunds more or less automatically.  Notwithstanding payment of such refunds, the IRS routinely examines such returns and, if it concludes that the taxpayer incorrectly computed the tax, it may assess additional tax after exhausting deficiency procedures.  In short, the fact that a taxpayer may ultimately have to repay the money initially refunded to her does not mean that she did not get a "refund."

The overall structure of the foreign tax credit provisions likewise shows the error of petitioner's argument.  As a cash basis taxpayer, petitioner is entitled to claim a credit for foreign income taxes when paid.  If her predictions prove correct and HMRC later collects additional 2002-2006 U.K. tax from her, she will be entitled to claim a credit for those taxes for the year in which she pays them.  If the credits she claimed on her 2003-2005 returns were not reduced to reflect the U.K.

**[*18]** tax that was previously refunded, she would in effect be allowed a double credit for the same tax.

Petitioner contends that rejection of her argument may result in "double taxation," contrary to the policies underlying the foreign tax credit and the U.S.-U.K. income tax treaty. She bases this contention on the assertion that, if she is required "to repay refunds previously received from H.M.R.C. * * * , and such repayments are considered creditable foreign taxes * * * in the year of payment, [her] personal circumstances are such that [she] would obtain no U.S. tax benefit from such credits."

Petitioner offers no explanation or factual support for this vague assertion, but it is unpersuasive in any event. It often happens that taxpayers, because of individual circumstances or passage of time, are unable to derive full benefit from contingent tax assets they have booked or expect to receive, such as carryforwards of foreign tax credits, net operating losses, passive losses, or investment interest. This does not demonstrate any structural defect in the Code and does not give rise to "double taxation." It simply reflects the facts that the future is unpredictable and that taxable income must be determined on an annual basis.[8]

---

[8]Petitioner contends that respondent's motion for partial summary judgment should be denied because "any failure of petitioner to notify the respondent of the

(continued...)

[*19] In sum, we conclude that the repayments of U.K. income tax that petitioner received during 2003-2005 represented previously paid foreign tax that was "refunded in whole or in part" within the meaning of section 905(c)(1)(C). To reflect this determination,

<u>An order will be issued granting respondent's motion for partial summary judgment</u>.

---

[8](...continued) receipt of a refund * * * at the time the repayments were received was due to reasonable cause." The existence vel non of "reasonable cause" may be relevant to petitioner's liability for the section 6662 accuracy-related penalty and/or the penalty imposed "[i]f the taxpayer fails to notify the Secretary * * * of foreign tax redetermination." <u>See</u> sec. 6689(a) (imposing penalty of up to 25% unless failure was "due to reasonable cause and not due to willful neglect"). But the existence of reasonable cause is irrelevant in determining whether the repayments of U.K. tax that petitioner received constituted "refunds" within the meaning of section 905(c)(1)(C). (Respondent did not move for summary judgment on the accuracy-related penalty. As far as we know, the IRS has not determined a section 6689 penalty and (if it had) that penalty, as an assessable penalty, would appear to lie outside our deficiency jurisdiction.)