**PITTWAY CORPORATION and Subsidiaries, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 95–2239.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 29, 1995.

Decided July 8, 1996.

Todd F. Maynes (argued), Lee Radford, Kirkland & Ellis, Chicago, IL, for plaintiff-appellant.

**502**

Gary R. Allen, David E. Carmack, Steven W. Parks (argued), Edward T. Perelmuter, Dept. of Justice, Tax Div., Appellate Section, Washington, DC, Michele M. Fox, James B. Burns, Office of U.S. Atty., Civ. Div., Appellate Section, Chicago, IL, for defendant-appellee.

Before EASTERBROOK, RIPPLE and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

In the field of tax law, timing often has drastic consequences. In this case, we must cross the Atlantic Ocean and consult the law of France to see when Pittway's 90% owned subsidiary, Valois S.A., declared a share dividend, which in turn governs the tax treatment of Valois's distribution to its shareholders and ultimately Pittway's own tax liability. We conclude that the district court correctly rejected Pittway's interpretation of the Internal Revenue Code and the applicable French law, and we therefore affirm the judgment.

The underlying facts are straightforward. Pittway is a Delaware corporation with its principal place of business in Chicago. Valois S.A., Pittway's 90% owned subsidiary, is a French societe anonyme, which is a business form roughly equivalent to a U.S. corporation. Valois, in turn, had a German wholly owned subsidiary, Perfect Ventil Valois GmBH (PVV). See generally Angel Rojo, The Typology of Companies, in European Company Laws: A Comparative Approach 41 (Robert R. Drury & Peter G. Xuereb, eds., 1991). On May 23, 1984, after complying with certain other requirements of French law, Valois's conseil d'administration, or Board of Directors, unanimously authorized the distribution of PVV stock. The directors were representatives of each of Valois's two shareholders, Pittway and an unrelated shareholder, COFIPSA. One of the directors representing Pittway also held Pittway's shareholder proxy to vote Pittway's shares in Valois at shareholder meetings.

The French Company Code, Law No. 66–537 of July 24, 1966, Article 347 (which we discuss in more detail below), requires shareholder approval of all dividends except certain interim dividends not at issue in this case. Accordingly, at the general shareholder meeting on June 28, 1984, Pittway, through its shareholder proxy held by its Valois director, formally approved receipt of the distribution. The shareholder meeting took place in late June, because French law required a notice period before a shareholder vote could take place. On July 9, 1984, Valois distributed the PVV stock to Pittway and the other shareholder.

Initially, Valois recognized the gain in the value of the PVV stock, measured by the difference between the fair market value of the property and its adjusted basis, in accordance with Internal Revenue Code § 311(d) (26 U.S.C.). On May 28, 1992, however, Pittway filed a claim for a tax refund. (Pittway enters the picture because, if Valois was entitled to exclude the distribution of the PVV stock for § 311 purposes, Valois could avoid recognizing gain on the stock, and thus reduce its accumulated profits. This, in turn, would increase the size of the foreign tax credit Pittway could claim under I.R.C. § 902.) Pittway presented two arguments in support of its claim. First, it asserted that § 311(d) did not apply to the PVV distribution because the dividend was "declared" on May 23, 1984, prior to the effective date of § 311(d). Second, it argued that the distribution fell within a transitional exception to § 311(d) provided by § 54(d)(3) of the Deficit Reduction Act of 1984, Pub.L. No. 98–369.

After the Commissioner disallowed Pittway's claim, Pittway filed the present suit in the district court. It moved for summary judgment on the two theories noted above, and the government responded with a motion for judgment on the pleadings. On April 25, 1995, the district court denied Pittway's motion and entered judgment for the government. Pittway has appealed, pressing the two arguments raised below.

■ The sole issue before us is a legal question, which we review de novo: did Valois's distribution of appreciated stock to Pittway fall within the amendment to § 311(d) made by § 54 of the Deficit Reduction Act of 1984, Pub.L. No. 98–369, 98 Stat. 494? Prior to 1984, § 311(d) said that, subject to exceptions not applicable here, "no gain or loss shall be recognized to a corporation on the

distribution, with respect to its stock, of (1) its stock (or rights to acquire its stock), or (2) property." Both parties agree that if the pre–1984 rule had not been changed, then Valois would not have had to recognize gain upon the stock distribution. The law was changed, however, to require a distributing corporation to recognize gain on its distribution of appreciated property at the time of the distribution. This case turns, in part, on the effective date of the new rule.

■■■ The language of § 54(a)(1) demarcates the line for pre–1984 Act and post–1984 Act distributions:

> Subsection (a). Except as otherwise provided in this subsection, the amendments made by subsection (a) shall apply to distributions declared on or after June 14, 1984, in taxable years ending after such date.

We must decide when the distribution was declared and then consult the remainder of subsection (d) to see if any other rule trumps the result given by our first inquiry. Ordinarily, we affix the moment of dividend declaration by looking to the law of the state of incorporation to find when shareholders had a legally enforceable right to the distribution. *United States v. National Bank of Commerce*, 472 U.S. 713, 722, 105 S.Ct. 2919, 2925, 86 L.Ed.2d 565 (1985); *Aquilino v. United States*, 363 U.S. 509, 513, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960); *Cabintaxi Corp. v. C.I.R.*, 63 F.3d 614 (7th Cir.1995); *United States v. Murine Co.*, 90 F.2d 549 (7th Cir.), *cert. denied*, 302 U.S. 734, 58 S.Ct. 119, 82 L.Ed. 567 (1937). Cf. *Nagy v. Riblet Products Corp.*, 79 F.3d 572, 574 (7th Cir. 1996) (discussing choice of law questions posed by multi-state corporations and the certainty produced by the "internal affairs doctrine"). On this issue of internal corporate affairs, we look not to the law of any of the United States but to the law of France a State in the international sense.

■■ Section 54(d) is an example of the effective date rules that riddle the Internal Revenue Code and that require, more than anything else, certainty of application. In determining when a distribution is declared under French law, we begin, just as we would with a question of U.S. law, with the language of the statute. In the supplemental briefs the Court requested after oral argument,[1] we learned that the 1984 versions of Articles 347 and 347–1 of the Commercial Code of France are the applicable provisions of law, and the parties submitted translations. Mysteriously, those versions still do not accord perfectly with one another, but nothing would be gained by further briefing. Beginning with the authoritative French version, the law reads, in pertinent part:

> Art. 347. Apres approbation des comptes et constatation de l'existence de sommes distribuables, l'assemblee generale determine la part attribuee aux associes sous forme de dividende.
>
> . . . .
>
> Tout dividende distribue en violation des regles ci-dessus enoncees est un dividende fictif.
>
> Art. 347–1. Les modalites de mise en paiement des dividendes votes par l'assemblee generale sont fixees par elle ou, a defaut, par le conseil d'administration, le directoire ou les gerants, selon le cas.
>
> Toutefois, la mise en paiement des dividendes doit avoir lieu dans un delai maximal de neuf mois apres la cloture de l'exercice. La prolongation de ce delai peut etre accordee par decision de justice.

Code des Societes (Dalloz 7th ed. 1986). Translated, it reads as follows:

> Art. 347. After approval of the accounts and the determination that there is distrib-

---

1. We were distressed that the parties had not seen fit to furnish us with either the original, French language version of the applicable code provision in their initial briefing, or with translations. In these times of ever increasing multinational business activity, parties must be prepared to inform the Court fully on questions of foreign law when they are pertinent to the case. Ideally, the parties should submit an agreed translation of any applicable statutes, regulations, or decided cases on which they rely, but if that proves to be impossible, each party should at least submit its own version. Here, unfortunately, even after our request at oral argument, the parties did not present us with consistent versions of the law. Pittway submitted only translations of the first paragraph of Article 347 and the first paragraph of Article 347–1. The Government, while it offered the French version and an English translation, submitted only Article 347.

utable income, the general shareholders' meeting shall decide what portion is to be allocated to the share owners in the form of a dividend.

. . . .

Any dividend distributed in violation of these rules is an unlawful dividend.

Art. 347–1. The terms of payment of dividends voted by the general shareholders' meeting shall be determined by it, or, failing such determination, by the board of directors, the executive committee of the board, or the managers, whichever is appropriate.

In any case, the payment of the dividend must occur no more than nine months after the decision is made. This period of time may be lengthened by a decision of the court.

Reciting the course of events we have outlined above, Pittway argues strenuously that Valois effectively ordered the distribution in the May 23, 1984, vote of the Board of Directors. It invites us to look behind the formalities of French law, which, it concedes, require a shareholder vote before distributions can occur. It emphasizes that Valois had only two shareholders and that Pittway could ensure the success of the shareholder vote without any help from the minority shareholder. Pittway criticizes the district court for relying on two old cases and one IRS ruling to support its conclusion that the distribution was not declared until the shareholders had acted: *Carney v. Crocker,* 94 F.2d 914 (1st Cir.1938); *United States v. Murine Co.,* 90 F.2d 549 (7th Cir.1937); I.T. 2744, 12–2 Cum.Bull. 402 (1933). In all of those situations, the courts and the IRS concluded that the purported declaration of the dividend was not final and unconditional until after the effective date of the tax. By arguing that the contrary is true here, however, Pittway simply assumes the answer to the very question we must address: under French law, is it possible for a dividend to be "definite, final, and irrevocable" before the general assembly of the shareholders has acted pursuant to Art. 347, paragraph 1? Pittway says yes and attempts to buttress its argument with citations to authority from the U.S. Supreme Court and various IRS Reve-

nue Rulings. But it is to French law we must turn for the characterization of the dividend at issue here.

■ We note in passing that the determination of foreign law is an issue of law for the court, under Fed.R.Civ.P. 44.1, and that the rule specifies that the court may consider any relevant material or source, whether or not submitted by a party or otherwise admissible under the Federal Rules of Evidence. If that were not plain enough, the Advisory Committee Notes accompanying the addition of Rule 44.1 to the Federal Rules of Civil Procedure in 1966 spell out the court's prerogative to engage in its own research and consider any relevant material thus found. Finally, the Advisory Committee Notes observe that the reason the district court's determination is to be treated as a ruling on a question of law is "so that appellate review will not be narrowly confined by the 'clearly erroneous' standard of Rule 52(a)."

Few questions in corporate law, or company law as it is more commonly termed in Europe, are more important than the allocation of powers among the internal institutions of the company. In the United States, the general powers of the shareholders, the board of directors, and management are relatively consistent from state to state, in part because of the competition among states for corporate charters and in part because of our common legal traditions. See Roberta Romano, The Genius of American Corporate Law (1993); Ralph K. Winter, Jr., State Law, Shareholder Protection, and the Theory of the Corporation, 6 J.Legal Stud. 251 (1977). In Europe, in spite of the best efforts of the Commission of the European Community to develop a Community-wide European corporation statute, corporate law continues to exist at the Member State level, with only minor exceptions. See, e.g., Terence L. Blackburn, The Societas Europea: The Evolving European Corporation Statute, 61 Fordham L.Rev. 695 (1993). Important differences among the European nations prevail, notwithstanding the fact that they all recognize limited liability companies. For example, the German Aktiengesellschaft uses a two-tiered board of directors: the supervisory board, or Aufsichtsrat, oversees compa-

ny affairs only in a general sense; it appoints the managerial board, or Vorstand, which is responsible for day-to-day decisions and which reports to the supervisory board. See Rojo, supra, at 44; Mark J. Roe, Some Differences in Corporate Structure in Germany, Japan, and the United States, 102 Yale L.J. 1927, 1941–42 (1993). Worker participation, or co-determination, occurs only on the supervisory board. Rojo, supra, at 44.

French law also allows societes anonymes to choose a two-tiered board, with a conseil d'administration or managerial board and a conseil de surveillance, or supervisory board. See Code des Societes, Arts. 89, 129. More commonly, however, French companies use a single board system, with only a conseil d'administration. See generally Doing Business in Europe (CCH) para. 25,180 (Xavier Jaspar, et al., France). The allocation of power between the board(s) of directors and the shareholders is no more accidental in France than it is anywhere else. Thus, the provision of Art. 347 with which we are concerned reflects a conscious decision on the part of the French National Assembly to allow the shareholders to exercise certain powers important to the company. To be sure, one commentator has opined that the effort has not roused shareholders to play as active a role in the management of their societes as the National Assembly may have hoped. Richard M. Buxbaum & Klaus J. Hopt, 4 Integration Through Law Legal Harmonization and the Business Enterprise 181 (1988). Nonetheless, we may not ignore the structure set up in the French legislation just because some think it might not be having its desired effect. There can be no dispute that French law clearly and consciously requires shareholder approval of dividends before the board of directors' action is legally binding. Indeed, the law specifies that "[a]ny dividend distributed in violation of these rules is an unlawful dividend." Pittway's invitation to look beyond the formalities of French law fails to take into account the subtle but important differences that exist between corporate governance arrangements in France (and other countries) and those typically found in the United States.

Pittway's assumption that the formalities are meaningless runs into another problem under French law. There was a minority shareholder: COFIPSA. Even though CO-FIPSA could not have outvoted Pittway at the general shareholders' meeting on June 28, it enjoyed other rights under French law. For example, Code des Societes Art. 226 authorizes 10% minority shareholders in a public or private company to petition the court for an expert review of management's operations. See Frank Wooldridge, Aspects of the Regulation of Groups of Companies in European Laws, 103, 117 in European Company Laws: A Comparative Approach, supra. The minority shareholders may use the expert report to ask the court to annul a decision of the majority shareholders or the directors, on the theory that the majority has committed an "abuse of rights." *Id.* at 118. In one famous decision, in response to such a petition, the court appointed a provisional manager to carry on a company's affairs. *Societe Fruehauf v. Massardy and others,* 1968 D.S.Jur. 147 (1965) J.C.P. II No. 14, 274 bis (Cour d'appel, Paris).

In light of these legal provisions and precedents, we would be quite unwarranted in concluding that the June 28 shareholders' action was meaningless as a matter of law. In fact, although Pittway may be right that it had the power to use its 90% interest to approve the dividend, nothing guaranteed that Pittway (and thus Valois) would not have changed its mind before the date fixed for shareholder action. Thus, at least from COFIPSA's standpoint, the dividend certainly was not final until it was duly approved. The dividend could not at the same time be final for Pittway, but not for COFIPSA. We therefore agree with the United States that the distribution in this case was not a final, legally effective action until it was ordered at the June 28 general shareholders' meeting, after the effective date of the amendments to § 311(d).

◼ Anticipating this result, Pittway argues in the alternative that it qualifies for the transitional exemption codified in § 54(d)(3) of the 1984 Act. Section 54(d)(3) provides, in pertinent part:

(3) Exception for distributions before January 1, 1985, to 80–percent corporate shareholders.

(A) In general. The amendments made by subsection (a) [which included the amendment to § 311] shall not apply to any distribution before January 1, 1985, to an 80–percent corporate shareholder if the basis of the property distributed is determined under section 301(d)(2) of the Internal Revenue Code of 1954.

Because Pittway was a 90% shareholder of Valois, the only question is whether Pittway's basis was determined under I.R.C. § 301(d)(2). Section 301(d)(2) governed the basis calculation for "Corporate Distributees ... unless paragraph (3) applies." Paragraph (3) applied only to "[f]oreign corporate distributees." This would seem to leave Pittway under § 301(d)(2) because it was the distributee of a foreign corporation. But § 301(d)(2) does not stand alone. Reading on, section 301(d)(4) provides:

Certain corporate distributees of foreign corporation. In the case of property described in subparagraph (C) of subsection (b)(1), the basis shall be determined by substituting the amount determined under such subparagraph (C) for the amount described in paragraph (2) of this subsection.

(Emphasis added). Turning to I.R.C. § 301(b)(1)(C), we find further guidance:

Certain corporate distributees of foreign corporation. Notwithstanding subparagraph (B) [calculation of amount distributed to corporations in general], if the shareholder is a corporation and the distributing corporation is a foreign corporation, the amount taken into account with respect to property (other than money) shall be the fair market value of such property. . . .

(Emphasis added). Putting all of this together, it appears that the amount of the distributed property was determined under § 301(b)(1)(C), and this amount became Pittway's basis for the distributed property under § 301(d)(4).

Pittway, trying to salvage its claim to a basis calculation under § 301(d)(2) (and, hence, the § 54(d)(3) exception), argues finally that, under I.R.C. § 964, Valois's accumulated profits had to be determined "according to rules substantially similar to those applicable to domestic corporations." *United States v. Goodyear Tire & Rubber Co.*, 493 U.S. 132, 145, 110 S.Ct. 462, 470, 107 L.Ed.2d 449 (1989). This, however, goes much too far: the fact that Valois's accumulated profits had to be determined by domestic tax principles does not mean that Pittway was not a corporate distributee of a foreign corporation under § 301(d)(4). Because Pittway's basis on Valois's distribution was determined by § 301(d)(4) and not by § 301(d)(2), the distribution does not qualify for the transitional exception from the new § 311(d).

Since neither the effective date of the dividend nor the transitional exception relieve Pittway from the tax changes imposed by the 1984 Act, we AFFIRM the judgment of the district court.