# United States Court of Appeals for the Federal Circuit

2006-5058

GUARDIAN INDUSTRIES CORP. AND SUBSIDIARIES,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

A. Duane Webber, Baker & McKenzie LLP, of Washington, DC, argued for plaintiff-appellee. With him on the brief was George M. Clarke III.

Joan I. Oppenheimer, Attorney, Tax Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant. With her on the brief were Eileen J. O'Connor, Assistant Attorney General; Richard T. Morrison, Deputy Assistant Attorney General; and Gilbert S. Rothenberg and Frank P. Cihlar, Attorneys.

Appealed from: United States Court of Federal Claims

Senior Judge James F. Merow

# United States Court of Appeals for the Federal Circuit

2006-5058

GUARDIAN INDUSTRIES CORP. AND SUBSIDIARIES,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

_____

DECIDED: February 23, 2007

_____

Before LINN, DYK, and MOORE, <u>Circuit Judges</u>.[*]

DYK, <u>Circuit Judge</u>.

The United States appeals from the judgment of the United States Court of Federal Claims granting the motion for summary judgment of appellee Guardian Industries Corp. and Subsidiaries ("Guardian") and ordering judgment in Guardian's favor in the amount of $2,729,268.00 for overpayment of taxes for the tax period ending December 31, 2001. <u>Guardian Indus. Corp. v. United States</u>, 65 Fed. Cl. 50 (2005). We affirm.

---

[*]  Circuit Judge Moore heard oral argument in this appeal but subsequently determined not to participate, taking no position in the decision of this case.

BACKGROUND

This case concerns the extent to which domestic corporations, under the United States tax code, can claim tax credits for foreign taxes they have paid. Section 901 of the Internal Revenue Code provides for a credit for "the amount of any income, war profits, and excess profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States." I.R.C. § 901(b)(1) (2006). Typically a domestic corporation cannot claim a foreign tax credit for foreign taxes paid by its foreign subsidiary until the year that the subsidiary repatriates its earnings. The regulations create an exception to this rule, however. Under Treas. Reg. § 301.7701-3(a) (2006) a foreign subsidiary can elect to be treated as a "disregarded" entity. If such an election is made, the U.S. parent and the foreign subsidiary are treated as a single company for U.S. tax purposes. The U.S. parent then reports the income of both entities on its U.S. tax return and can claim a foreign tax credit for foreign taxes paid by the subsidiary.[1]

In this case Guardian Industries Corp., a Delaware corporation, is the parent company of a group of subsidiaries in the United States, referred to collectively as "Guardian," which have elected to file a consolidated return. One of Guardian's domestic subsidiaries, Interguard Holding Corp. ("IHC") is the sole shareholder of Guardian Industries Europe, S.a.r.l. ("GIE"), a Luxembourg company. In 2001, the

---

[1] See Staff of S. Comm. On Finance, 104th Cong., Description and Analysis of Present-Law Tax Rules Relating to Income Earned by U.S. Businesses from Foreign Operations 3 (Comm. Print 1995) ("U.S. persons that conduct foreign operations directly (that is, not through a foreign corporation) include income (or loss) from those operations on their U.S. tax return for the year the income is earned or the loss is incurred.").

Internal Revenue Service ("IRS") approved an election by GIE under Treas. Reg. § 301.7701-3(a) to be treated as a foreign eligible entity with a single owner and to be disregarded as an entity separate from IHC. GIE holds a controlling interest in and is the parent of a number of Luxembourg subsidiaries. The question here is whether Guardian can claim a credit for certain foreign taxes paid by GIE.

For tax year 2001, GIE paid 3,429,074 Euros in Luxembourg income taxes ("loi de l'impôt sur le revenu" or "LIR") on behalf of itself and its subsidiaries. Guardian had first filed its 2001 tax return treating the Luxembourg tax paid by GIE on behalf of itself and its subsidiaries as allocable pro rata among GIE and its subsidiaries, and claimed a credit only for that portion of the tax allocable to GIE itself. Then, in an amended U.S. tax return for tax year 2001, Guardian, pursuant to I.R.C. § 901, claimed it was entitled to a credit in the amount of Luxembourg taxes paid by GIE on behalf of both itself and its subsidiaries. Having obtained no action on its request for a refund, Guardian filed a complaint in the Court of Federal Claims claiming entitlement to a refund of taxes paid.

The government made two arguments in the Court of Federal Claims, relying on two regulations. The first regulation provides in relevant part that "[t]he person by whom tax is considered paid for purposes of [I.R.C.] section[] 901 . . . is the person on whom foreign law imposes legal liability for such tax, even if another person (e.g., a withholding agent) remits such tax." Treas. Reg. § 1.901-2(f)(1) (emphasis added). The government argued that, under Luxembourg law, GIE's subsidiaries were legally liable for taxes on the income they had earned, even though GIE paid those taxes on the subsidiaries' behalf, and that therefore Guardian was not entitled to a foreign tax credit with respect to those taxes. The second regulation provides that if a corporation

and its subsidiaries are jointly and severally liable for a tax under foreign law, then each entity is liable "for the amount of the foreign income tax that is attributable to its portion of the base of the tax." Treas. Reg. § 1.901-2(f)(3). With respect to this regulation the government argued that, under Luxembourg law, GIE and its Luxembourg subsidiaries were jointly and severally liable for the LIR tax, and consequently that Guardian could not obtain a credit for taxes paid by GIE on the subsidiaries' behalf.

The Court of Federal Claims, relying on the text of the Luxembourg statutes and regulations and on reports and declarations of several well-qualified experts in Luxembourg law presented by both sides, concluded that Luxembourg law did not make GIE and its subsidiaries jointly and severally liable for the taxes under Treas. Reg. § 1.901-2(f)(3). While the Court of Federal Claims stated that GIE, the parent, was liable for the tax, it did not address in any detail the government's other argument that, under Treas. Reg. § 1.901-2(f)(1), the subsidiaries, and not the parent, were "the person on whom foreign law imposes legal liability for such tax." The Court of Federal Claims granted summary judgment for Guardian and entered judgment in Guardian's favor in the amount of $2,729,268.00 for overpayments, with interest. The government timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3) (2000).

DISCUSSION

On appeal the government does not challenge the determination of the Court of Federal Claims that, under Luxembourg law, GIE and its subsidiaries are not jointly and severally liable for the taxes paid by GIE, and that consequently, Treas. Reg. § 1.901-2(f)(3) does not require apportionment of the tax. Rather, the government's sole argument is that, pursuant to Treas. Reg. § 1.901-2(f)(1), GIE did not have "legal

liability" for the tax imposed on its subsidiaries within the meaning of the regulation, and, therefore, Guardian cannot claim a credit for the tax imposed on GIE's subsidiaries. "We review the Court of Federal Claims' decisions on summary judgment and conclusions of law without deference." Old Stone Corp. v. United States, 450 F.3d 1360, 1367 (Fed. Cir. 2006).

I

As noted, Treas. Reg. § 1.901-2(f)(1) states in relevant part that "[t]he person by whom tax is considered paid for purposes of [I.R.C.] section[] 901 . . . is the person on whom foreign law imposes legal liability for such tax, even if another person (e.g., a withholding agent) remits such tax." The regulation on its face distinguishes between two situations. In one the person paying the tax is merely a withholding agent (or similarly, a remittance agent) and is paying the tax on behalf of another person who is legally liable for the tax. In the other the person paying the tax is the person with "legal liability for such tax." Treas. Reg. § 1.901-2(f)(1).

The line separating a person who is liable for the tax and a person who is merely a withholding or remittance agent is a difficult one to draw, and the regulation itself provides no guidance. Rather, the regulation mandates an inquiry into "foreign law" to determine which situation exists. Treas. Reg. § 1.901-2(f)(1). The determination of foreign law is a question of law which we review de novo. See Fed. R. Civ. P. 44.1; id., Advisory Committee Notes ("[T]he court's determination of an issue of foreign law is to be treated as a ruling on a question of 'law,' not 'fact,' so that appellate review will not be narrowly confined by the 'clearly erroneous' standard of [review]."); 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §§ 2444, 2446 (2d ed. 1994).

II

The government argues that the parent here should be treated as a mere collection or remittance agent, relying on several Tax Court cases involving foreign tax credits. In virtually all of these cases the tax years in question predated the adoption of section 1.901-2 of the regulations in 1983, see 48 Fed. Reg. 46,272 (October 12, 1983), and the decisions did not interpret the regulation. Rather they appeared to apply generally the same test later incorporated in the regulations. We turn to those cases.[2]

In the first case, a New York corporation loaned funds to its British subsidiary, which paid interest to the parent. Pursuant to British law the subsidiary withheld a portion of its interest payments to its parent and paid that portion to the British government as a tax. Gleason Works v. Comm'r, 58 T.C. 464, 464-65 (1972). The court held that the party on whom the tax was imposed was the U.S. corporation, and that the British subsidiary paid the tax "purely as a matter of collection." Id. at 479. The court analogized the common situation where a U.S. employer withholds a portion of an employee's wages and pays it over to the IRS, but the tax is nonetheless imposed on the employee. Id. at 478. The government also relies on a series of cases involving Brazilian law, of which Nissho Iwai American Corp. v. Comm'r, 89 T.C. 765 (1987), is

---

[2]     In addition to the foreign tax credit cases discussed in the text, the government also relies on the Supreme Court's decision in Wisconsin Gas & Electric Co. v. United States, 322 U.S. 526 (1944), which involved entitlement to a federal deduction for taxes paid to the state. There a Wisconsin public utility sought to deduct taxes paid to the state, amounting to a fixed percentage of dividends paid to shareholders, under a provision that provided that taxes were deductible "only by the person upon whom they are imposed." Id. at 527. The Court held that under the relevant Wisconsin law, the utility was a mere tax collector and that the tax was imposed on the shareholders, and thus that the corporation was not entitled to the deduction. Id. at 529-30.

representative. There too foreign borrowers were required to pay to the Brazilian state a portion of the interest payments owing to U.S. banks on loans. Id. at 768-69. The interest rate in those cases was net of the tax, so that the borrower had to absorb any increase in the Brazilian tax and the lender was unaffected. Id. at 769. Also, the Brazilian government subsidized the payment of the tax by Brazilian borrowers under certain conditions. Id. at 770. The court nonetheless held that the U.S. lender was the party on whom the tax was imposed, and not the Brazilian borrower, from whom the tax was merely collected. Id. at 774.

These cases do not resolve the question at hand. They merely serve to illustrate the general and undisputed proposition that the party who pays the tax may not be the party that is legally liable for the tax. The cases cited concluded that the British and Brazilian laws at issue there did not impose legal liability for the tax on the borrowers, but treated them as withholding or remittance agents only. The cases neither illuminate the meaning of the regulation in the present context, nor are the foreign laws at issue in those cases counterparts of the Luxembourg law at issue here.

Since the regulation points us to the "foreign law" to determine which entity has legal liability for the tax imposed, we turn to the specific provisions of Luxembourg law.

III

GIE filed a consolidated Luxembourg tax return on behalf of itself and its subsidiaries pursuant to Article 164bis of Luxembourg Tax Law ("loi de l'impôt sur le revenu" or "LIR"). LIR article 164bis during the tax year in question provided (in translation):

> A fully-taxable resident company, the share capital of which is at
> least 99% held, either directly or indirectly, by another fully-taxable

resident company and which is economically and organizationally integrated into the latter may, upon approval by the Ministry of Finance, <u>be assimilated for corporate income tax purposes to a permanent establishment of the parent company</u>. . . A Grand [D]ucal decree shall determine the terms and conditions for the above-mentioned special regime.

LIR Article 164bis (2001) (emphasis added). Thus Luxembourg LIR Article 164bis provides that a subsidiary "may . . . be assimilated for corporate income tax purposes to . . . the parent company." The verb "assimilated" in no way suggests that the parent company becomes a mere withholding or remittance agent; rather it suggests that the parent company is the only entity that exists for tax purposes, and therefore any taxes could only be imposed on the parent company.

As required by Article 164bis, a Grand Ducal decree issued in 1981. It provides in relevant part (in translation):

> (1) Should a tax consolidation regime apply for a group of companies, <u>the parent company and the subsidiary companies that are assimilated to permanent establishments of the parent company</u> must have the same opening and closing dates for their respective fiscal years. Each entity of the group has to determine its own annual tax result and has to file a tax return as if it would not be a part of the group. <u>The parent company must furthermore file a tax return including the taxable income of the group</u> obtained by adding or compensating the fiscal results of companies members of the group and by deducting from this amount special allowable expenses incurred by these companies. If the tax consolidation regime leads to a double taxation or a double deduction, this effect has to be neutralized by an appropriate adjustment to the group global result. . . .
> (4) <u>The parent company is liable for corporate income tax corresponding to taxable income of the group, computed in accordance with above-mentioned rules</u>. It is also liable, in accordance with Article 135 Income Tax Law, to pay corporate income tax advances computed on the basis of above-mentioned taxable income.

Luxembourg Grand Ducal decree (July 1, 1981) (emphasis added). The Grand Ducal decree thus elaborates on the standard set forth in Article 164bis. Paragraph (4) states that "[t]he parent company is liable for corporate income tax corresponding to taxable income of the group." The statement that the parent company is "liable" seems dispositive, since Treas. Reg. § 1.901-2(f)(1) points to "the person on whom foreign law imposes legal liability for such tax." Thus paragraph (4) of the Grand Ducal decree seems to conclusively answer the question posed by Treas. Reg. § 1.901-2(f)(1) by providing that the parent company—GIE in this case—is the party "liable" for the tax.

There is confirmation of what seems obvious from the face of paragraph (4) of the decree, that the parent reports income on behalf of the entire group and is subject to liability for the tax. Paragraph (1) of the Grand Ducal decree provides the method of calculation of the tax. It states that "[e]ach entity of the group has to determine its own annual tax result and has to file a tax return as if it would not be a part of the group." The parent company files a return "including the taxable income of the group." The Court of Federal Claims noted the manner in which this regime is administered. It found that, in practice, "[w]hile individual members of the group file tax returns . . . the parent [] files a consolidated return and receives the notice of assessment for the LIR tax and the members each receive an assessment notice indicating zero taxable income." 65 Fed. Cl. at 55.

The conclusion that the parent company bears sole liability for the tax under Luxembourg law is also supported by the expert testimony during the trial. Guardian's expert, Mr. Carlo Mack, the Deputy Director of the Luxembourg tax authority (Administration des Contributions Directes), testified that, under the regime of Article

164bis and the Grand Ducal decree, 'the parent company . . . is the sole debtor of the corporate income tax of the group," and that Luxembourg law "doesn't provide a determination to the separate tax liability . . . [of] the parent company." 65 Fed. Cl. at 55. This testimony suggests that the parent company is liable for the taxes of all the group members. Mr. Mack is well qualified on the subject of Luxembourg law, and the Court of Federal Claims correctly gave considerable weight to his testimony. The government acknowledges Mr. Mack's qualifications in its brief, stating that "[s]ince Mack helped draft Article 164bis LIR and the Grand Ducal decree of July 1, 1981, and holds the number two position in the Luxembourg Taxing Authority . . . his interpretation of Luxembourg law should control." Appellant Br. 31. We conclude that Luxembourg law does not make the parent a mere collection or remittance agent, and that the parent has "legal liability" for the tax.

IV

However, the government argues that Treas. Reg. § 1.901-2(f)(1) creates a regime under which the party liable for the tax within the meaning of the regulation is the party that earns the income under Luxembourg law. The government explicitly argues that "'the person on whom foreign law imposes legal liability for such tax' [] is the person whose income is subject to the tax, not the person who is legally responsible for paying the tax." Appellant Br. at 12-13 (citing examples under Treas. Reg. § 1.901-2(f)(1)). The government points out that the testimony of Guardian's own expert, Mr. Carlo Mack, established that the income being taxed under Luxembourg law is the income of the subsidiaries, and that under Luxembourg law, "[t]he tax law doesn't provide an effective transfer of income earned by the subsidiaries." Id. at 31. Similarly, the

government's expert, Mr. Elvinger, testified that the income of the subsidiaries is not attributed to the parent under Luxembourg law. Thus, the government argues, since the subsidiaries earn their income under Luxembourg law, they should be treated as "liab[le]" for the tax on that income under the Treasury regulation. Treas. Reg. § 1.901-2(f)(1).

We reject the government's argument. There is no indication that the applicable Treas. Reg. § 1.901-2(f)(1) contemplates an inquiry into which party earns the income under foreign law. Also, contrary to the government's argument, the British and Brazilian cases discussed above do not hold that entitlement to the credit depends on which entity "earned" the income but rather on which entity bore the imposition of the tax. The Treasury has the ability to draft a regulation that specifically calls for such a regime, and it has not done so here.[3] In fact, Treas. Reg. § 1.901-2(f)(3), requiring allocation of the credit where the liability is joint and several, specifically requires that the allocation be based on the "amount of the foreign income tax that is attributable to [a person's] portion of the base of the tax."[4] Tellingly no similar language appears in

---

[3]     The Treasury has recently proposed modifying Treas. Reg. § 1.901-2(f)(1). 71 Fed. Reg. 44,240 (Aug. 4, 2006). The new regulation would provide that "[i]ncome tax . . . is considered paid for U.S. income tax purposes by the person on whom foreign law imposes legal liability for such tax. In general, foreign law is considered to impose legal liability for tax on income on the person who is required to take the income into account for foreign income tax purposes." Id. at 44,243. We take no position on whether this new regulation, if adopted, would provide that the party liable for the tax is the party that, under foreign law, earns the income taxed.

[4]     Treas. Reg. § 1.901-2(f)(3) provides:

If foreign income tax is imposed on the combined income of two or more related persons (for example, a husband and wife or a corporation and one or more of its subsidiaries) and they are jointly and severally liable for the income tax under foreign law, foreign

Treas. Reg. § 1.901-2(f)(1).

The government finally argues that we should adopt its "earnings" interpretation of the regulation because that interpretation, in its view, would further the policy of the foreign tax credit, which is to avoid double taxation. See United States v. Goodyear Tire and Rubber Co., 493 U.S. 132, 139 (1989) (describing the purpose of the foreign tax credit as "protection against double taxation"). The government contends that that purpose would be frustrated by allowing Guardian to claim a credit in 2001 for taxes paid by the subsidiaries, when the income of the subsidiaries has never been taxed in the United States.

The government's appeal to the policy underlying the foreign tax credit is unavailing. The government's argument appears to assume that if its proposed "earnings" test were adopted, the allowance of the credit would avoid double taxation. We fail to see why this would be so. United States taxation of the income of a disregarded foreign subsidiary does not depend on the provisions of foreign law as to which entity "earns" the income. Thus under an "earnings" regime the credit could be available even if there were no United States tax on the income giving rise to the credit. In any event, the regulation is clear on its face, and we must interpret it as written.

We therefore hold that, based on the text of the relevant regulations and the

law is considered to impose legal liability on each such person for the amount of the foreign income tax that is attributable to its portion of the base of the tax, regardless of which person actually pays the tax.

(emphasis added). The government agrees that, under Treas. Reg. § 1.901-2(f)(3), "the tax must be apportioned based on the relative amounts of such persons' taxable incomes under foreign law." Appellant Br. 15.

Luxembourg laws, GIE is the party liable for the tax under Luxembourg law, within the meaning of Treas. Reg. § 1.901-2(f)(1), and that consequently the Court of Federal Claims correctly held that the government was obligated to pay the refund.

CONCLUSION

For the foregoing reasons, the decision below is affirmed.

AFFIRMED

COSTS

No costs.